United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br><br>Victor & Stacy Watts<br><br>Debtor. | Case No. 15bk40737<br><br>Chapter 7 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON VILLAGE BANK & TRUST'S MOTION TO DISMISS CHAPTER 7 CASE

Debtors Victor and Stacy Watts filed a petition for Chapter 7 bankruptcy relief on November 30, 2015. One of their creditors, Village Bank & Trust ("Village Bank") filed a Motion [Dkt. No. 23] to dismiss the Debtors' Chapter 7 bankruptcy case "for cause" under § 707(a) and/or for abuse pursuant § 707(b) of the Bankruptcy Code, 11 U.S.C. §§ 101 *et al.* Village Bank contends that the Debtors have sufficient income to fund a Chapter 13 plan under which unsecured creditors like it would receive plan payment disbursements substantially larger than if the Debtors were to proceed under Chapter 7 of the Bankruptcy Code.

According to Village Bank, dismissal of Debtors' Chapter 7 bankruptcy case is warranted because monthly expenses set forth in their schedules and other bankruptcy forms are either unnecessary or unsubstantiated. First, Village Bank points to a certain car loan, which it contends Debtors propose to reaffirm at the expense of unsecured creditors. Second, it contends that over $500 in monthly expenses are unsubstantiated, based on the Debtors' own bankruptcy schedules, and such amounts are therefore available to make plan payments in a Chapter 13 case.

Hearing on the evidence was held over the course of one afternoon on August 4, 2016. Thereafter, the parties submitted briefs in support of their positions and the Motion was taken under advisement. Findings of Fact and Conclusions of Law will now be made and entered. As detailed below, Debtors have failed to substantiate certain expenses, and are therefore left with sufficient monthly disposable income to fund a Chapter 13 plan. Because a presumption of abuse under § 707(b) has been established and Debtors have failed to rebut such

presumption, their Chapter 7 bankruptcy case will be dismissed unless converted to one under Chapter 13.

## FINDINGS OF FACT

The following facts are drawn from Village Bank's Motion, the Debtor's response thereto, the parties' post-trial briefs, and from the testimony and evidence presented and admitted at the evidentiary hearing held on August 4, 2016.

On or about January 29, 2014, Village Bank & Trust loaned Three C's LLC, an Illinois Limited Liability Company, ("Three C's LLC") $93,000.00 as evidenced by a Promissory Note in the original principal amount of $93,000.00 executed by Three C's LLC in favor of Village Bank & Trust. Three C's LLC operated a Subway restaurant.

On or about January 29, 2014, Debtors Victor Watts and Stacy Watts each executed a Commercial Guaranty unconditionally guarantying payment of the $93,000.00 Note.

In or around November of 2014, the Subway restaurant closed. Three C's LLC defaulted under the terms of the $93,000.00 Note, and Debtors failed to perform under the terms of the Commercial Guaranty.

On or about January 8, 2015, Village Bank & Trust filed in the Circuit Court of Cook County, its Complaint at Law, Case No. 15 L 145, against Three C's LLC and the Debtors.

On April 17, 2015, a $89,087.10 monetary judgment was entered against Three C's LLC and the Debtors.

On November 30, 2015, Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Concurrently with their bankruptcy petition, Debtors filed Official Form 22A-2 consisting of their required Chapter 7 Means Test Calculation, along with complete Schedules of income, expenses, debts, assets and other required information. Their bankruptcy petition identifies their debts as

primarily consumer debts and Debtors do not dispute this characterization or classify their debts as primarily business or non-consumer debts.

According to the Debtors' Schedule J, their household consists of themselves and their three children, two adult daughters and a 13-year-old son.

According to the Debtors' Official Form 22A-1 Chapter 7 Statement of Your Current Monthly Income, filed November 30, 2015, their annual income (both Debtors are employed) is $148,133.52 and the median family income for their size household is $94,918.00.[1]

Debtors' Official Form 22A-2 Chapter 7 Means Test Calculation, filed November 30, 2015, alleges monthly disposable income, in Item No. 39(c) of that form, of negative $78.45. Based on this figure, no presumption of abuse is said to arise in accordance with the representations in their Chapter 7 Means Test Calculation.

Debtors' Chapter 7 Means Test Calculation, Official Form 22A-2, lists "Involuntary Deductions" of $1,671.15, see Line Item No. 17. In Schedule I, however, Debtors listed under Line Item Nos. 5b and 5g mandatory contributions for retirement plans and union dues a total of $1,092.07, and do not account for the additional $579.08 in involuntary deductions reflected in their Chapter 7 Means Test Calculation.

According to the Debtors' Schedules B and D, filed on November 30, 2015, they own two cars, one of them being a 2015 Chevrolet Suburban worth $43,730.00 with a balance owed of $36,796.00.

According to the Debtors' Reaffirmation Agreement with Navy Federal Credit Union, filed on February 16, 2016, Debtors seek to reaffirm the debt owed on the 2015 Chevrolet Suburban, listed therein to total $33,095.64, with a current market value of the vehicle estimated at $44,475.00, amounts somewhat different from those shown on Schedule B and D.

---

[1]    The source of State-specific median family income is the Census Bureau, as reproduced by the United States Trustee and referenced in the instructions to filling out National Bankruptcy Forms. *See* Census Bureau, IRS Data and Administrative Expenses Multipliers, https://www.justice.gov/ust/means-testing.

Co-Debtor Victor Watts traded in his old vehicle for the 2015 Chevrolet Suburban in or around December of 2014, shortly after the Subway restaurant closed but before Village Bank initiated proceedings in state court against the Three C's LLC and the Debtors to collect on the Note and the Guarantee. Debtors filed the current bankruptcy case approximately one year after they purchased the Chevrolet Suburban.

## CONCLUSIONS OF LAW

### JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer a proceeding to a bankruptcy judge under 28 U.S.C. § 157, and this proceeding is referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O). It seeks to determine eligibility for relief under Chapter 7 of the Bankruptcy Code, *see* 11 U.S.C. § 707. It therefore "stems from the bankruptcy itself" and may constitutionally be decided by a bankruptcy judge. *See Stern v. Marshall*, 131 S.Ct. 2594, 2618 (2011).

### DISMISSAL OF A CASE UNDER § 707(a)

Section 707 of the Code specifies bases for dismissing a debtor's chapter 7 case. Pursuant to § 707(a),

> The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

11 U.S.C. § 707(a).

4

In moving to dismiss this case "for cause," Village Bank contends that Debtors' monthly expenses includes monthly car payments of $579.85 on a vehicle with a current market value of approximately $44,000.00 and on which they owe approximately $33,000.00. According to Village Bank, Debtors' proposed reaffirmation of this debt amounts to "abuse" under § 707(a). It contends that Debtors should sell the Suburban, use the equity in that vehicle to purchase a less expensive car and free up well over $500.00 in current monthly expenses to pay unsecured creditors under a Chapter 13 plan. Over a period of 60 months, the income freed up could add up to more than $30,000.00, which could be paid to unsecured creditors like Village Bank.

In opposing dismissal, Debtors argue that the statutory standard has not been met in this case because the procedural defects enumerated in subsections (1) through (3) of § 707(a) have not been alleged or established. However, this argument ignores the fact that these enumerated conditions are not exclusive. *See* § 707(a). More importantly, as noted by Village Bank, Debtors' argument has recently been rejected by the Seventh Circuit. *See In re Schwartz*, 799 F 3d 760, 763 (7th Cir. 2015).

In *Schwartz*, the Seventh Circuit held that dismissal "for cause" need not be based on procedural defects listed and that "an unjustified refusal to pay one's debts is a valid ground under 11 U.S.C. § 707(a) to deny a discharge of a bankrupt's debts." *Id.* at 764. The Seventh Circuit opinion noted that:

> It would make no sense to limit "for cause" to procedural defects in the bankruptcy petition. Suppose the debtor can pay all or some of his debts without hardship yet refuses without any plausible excuse. We agree with the cases that allow "for cause" to embrace conduct that, while not a violation of required procedures, avoids repayment of debt without an adequate reason.

*Id.* at 763 (citations omitted). In that case, the debtor's annual after-tax income of $114,000.00 was at least as high as the median family income in their region. Among the debtor's family expenses was a monthly car payment of $850.00 for a

Range Rover. Therefore, it is clear that "for cause" could encompass the type of conduct complained of by Village Bank in this case.

Nonetheless, the circumstance in this case—Debtors' monthly car payment of $579.85—does not alone constitute "cause" for dismissal, as the Seventh Circuit opinion interpreted this term. In *Schwartz*, the bankruptcy court had considered circumstances beyond the car payment. In that case, the debtor had lost his job but maintained a number of optional consumer expenditures beyond the household's monthly income—including private school tuition for the debtor's children and a monthly payment of $850 for a Range Rover. *See id.* at 762. In this case, the Debtors' income is higher than the household income in *Schwartz*, both Debtors remain employed, and optional consumer expenditures complained of are limited to the $579.85 car payment for the Chevrolet Suburban. While the Debtors arguably could reduce their monthly expenditures to free up some monthly income and pay their unsecured creditors, the Debtors here have not evidenced an unjustified refusal to pay their debts based on retention of the Suburban to justify dismissal under § 707(a), as interpreted by *Schwartz. See id.* at 764.

Village Bank contends that the Debtors should sell the Chevrolet Suburban, purchase a used car with what it estimates can be about $8,000 to $10,000 in equity currently held by Debtors in their current vehicle, and dedicate their current monthly car payment of $579.85 to make plan payments to unsecured creditors under a Chapter 13 plan. However, the argument that the Debtors could actually sell the Chevrolet Suburban for a certain amount and purchase another reliable vehicle to meet their family needs is speculative. Village Bank also cites no case where a court has required a debtor to cut his or her expenses in the manner suggested in order to free up income to fund a Chapter 13 plan. In light of the speculative nature of the argument, it would be unduly burdensome to require Debtors to sell their current vehicle, purchase a used vehicle (or one that can lower their monthly car payments) in order to dedicate more of their income to paying unsecured creditors under a Chapter 13 plan.

While Debtors' current car payment will not justify dismissal "for cause" under § 707(a), dismissal under § 707(b) is warranted for other reasons discussed below.

### DISMISSAL OR CONVERSION UNDER § 707(b)

In seeking dismissal of the Debtors' chapter 7 case under § 707(b), Village Bank contends that Debtors' schedules show that they have sufficient monthly disposable income to fund a Chapter 13 case. In order to dismiss a case for abuse under § 707(b), the debtor must have debts that are "primarily consumer debts." 11 U.S.C. § 707(b)(1); *see* § 101(8); *In re Terzo*, 502 B.R. 553, 556 (N.D. Ill. 2013). Debtors in this case have classified their debts as primarily consumer debts in their bankruptcy petition, and do not dispute that the requirements of § 707(b) are otherwise applicable to them.

Section 707(b)(1) of the Code permits dismissal of a debtor's chapter 7 case if granting relief "would be an abuse of the provisions of this chapter." Under § 707(b)(2), the court must "presume abuse" if a debtor fails the "means test." Under § 707(b)(3), a court may dismiss even the case of a debtor who passes the means test, or who rebuts the presumption of abuse under § 707(b)(2), if the debtor filed the petition in bad faith or if "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." *See In re Ross-Tousey*, 549 F.3d 1148, 1161-62 (7th Cir. 2008). "Totality of the circumstances" is not defined, and the Seventh Circuit has never addressed it. The structure of the statute, however, suggests that the test requires a subjective, holistic assessment of debtors and their circumstances. *See In re Bacardi*, No. 09 B 25757, 2010 WL 54760, at *3 (Bankr. N.D. Ill. Jan. 6, 2010).

The separate requirement in § 707(b)(3)(A) that the court dismiss a case filed in "bad faith" indicates that the case can be dismissed for abuse under the statutory "totality of the circumstances" test based solely on ability to pay and without necessity to show proof of misconduct. *Id. See also In re Deutscher*, 419 B.R. 42, 45 (Bankr. N.D. Ill. 2009):

7

Under the totality of the circumstances test, 'a debtor's ability to pay may be the most relevant factor, but the Court must also consider: (1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability or unemployment; (2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to pay; (3) whether the debtor's proposed family budget is excessive or unreasonable; and (4) whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition.'

*Deutscher*, 419 B.R. at 45 (citations omitted). *See also Bacardi*, 2010 WL 54760, at *3. The "totality of the circumstances" analysis is fact-intensive and considered on a case-by-case basis. *Id.*

In this case, Village Bank disputes the monthly expenditures included in the Debtors' Means Test Calculation, pointing to a discrepancy of $579.08 in the expenditures set forth in the Means Test Calculation and the Debtors' schedules reflecting household income and expenses. Debtors' Chapter 7 Means Test Calculation, Official Form 22A-2, filed November 30, 2015, lists on Line Item No. 17 entitled *Involuntary Deductions* an amount of $1,671.15. Debtors' Schedule I filed November 30, 2015, Item No. 5a entitled *Mandatory contributions for retirement plans* and Item No. 5g entitled *Union dues* total $1,092.07, a difference of $579.08.

Debtors do not dispute this discrepancy, but claim that this additional $579.08 in monthly expenditures is required by co-Debtor Victor Watt's employment and therefore properly accounted for in Debtors' Chapter 7 Means Test Calculation. At trial, however, they failed to offer any corroboration for this additional $579.08 in monthly expenses. While co-Debtor Victor Watts testified that these expenses were required by his employment, he offered no records or proof that such expenses were actually required or incurred. He testified that he spent those additional amounts in necessary clothes, meals and transportation, but he had no receipts or any records evidencing any part of the claimed expenditures or substantiating the claimed amount of such monthly expenditures. Debtors therefore have not shown that they incur the additional

8

$579.08 in monthly expenses required by co-Debtor's employment that was not claimed in their schedules.

Based on the Debtors' Chapter 7 Means Test Calculation, the difference of $579.08 would result in the Debtors having monthly disposable income of $502.63 rather than the figure of -$78.45 listed on Line Item No. 39(c). The Debtors' disposable income over a 60 month Chapter 13 Plan would be $30,037.80, which is more than the non-presumptive abuse figure of $12,475.00 referenced in Section 707(b)(2)(A). Based on these numbers, relief in the Debtors' Chapter 7 bankruptcy case is presumed to be an abuse. Because the presumption of abuse arises and the Debtors have failed to rebut this presumption, Debtors' Chapter 7 case must be dismissed unless converted to a case under Chapter 13.

Debtors argue that the claimed deduction of the additional $579.08 not otherwise claimed in their schedules may properly be claimed because that expense is required by co-Debtor Victor Watt's employment, and they reference case law supporting the propriety of this type of expense deduction. However, the issue at trial was not whether those deductions were proper but whether the Debtors could show that those expenses were actually, required, incurred, and could therefore be claimed in their Chapter 7 Means Test Calculation.

Village Bank clearly questioned prior to trial the existence of the claimed involuntary deductions based on the discrepancy between the expenses claimed in Debtors' schedules and those claimed in their Chapter 7 Means Test Calculation. In response, Debtors failed to show by evidence that those claimed expenses are actually required and incurred. Accordingly, they may not rely on such deductions to avoid a presumption of abuse based on their Chapter 7 Means Test Calculation.

## CONCLUSION

For the foregoing reasons, Village Bank's Motion to Dismiss Debtors' Chapter 7 Case will be granted, by separate order. Debtors' Chapter 7 case will be dismissed, in accordance with that order, unless that case is converted to a 60

month proceeding paying at least $500 per month under Chapter 13 of the
Bankruptcy Code.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 13th day of September, 2016

SEP 1 3 2016

10

15 B 40737
In re: Victor B. And Stacy M. Watts

## CERTIFICATE OF SERVICE

I, Dorothy Clay, certify that on September 13, 2016, I caused to be served copies of the foregoing document to the following by electronic service through the Court's CM/ECF system or regular U.S. mail:

_____
Judicial Assistant/Deputy Clerk

### Electronic Service through CM/ECF System

Thomas W Lynch
Thomas W Lynch & Associates PC
9231 S Roberts Rd
Hickory Hills, IL 60457
Counsel for Debtors

Matthew L. Hendricksen
Francis J. Pendergast, III
Crowley & Lamb, P.C.
221 N. LaSalle Street
Suite 1550
Chicago, IL 60601
Counsel for Creditor Village Bank & Trust